RECEIVED CLERK'S OFFICE

2008 JAN 30  A 11: 27

DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON, SC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

James M. Bell,           )    C. A. No. 9:06-1095-PMD-RSC
                         )
        Plaintiff,       )
                         )
        -versus-         )    **REPORT AND RECOMMENDATION**
                         )
Town of Port Royal, South)
Carolina, a body politic,)
                         )
        Defendant.       )

This claim of employment discrimination on account of race and age brought by a former employee of the defendant is before the undersigned United States Magistrate Judge for a report and recommendation on the defendant's motion for summary judgment filed on September 17, 2007. 28 U.S.C. § 636(b).

The plaintiff, James M. Bell, an African American 55 year old male, was a long term employee of the defendant, Town of Port Royal where he worked as a police officer. He was terminated on March 25, 2005, for, according to the defendant, use of excessive force in a February 12, 2005, arrest accompanied by unacceptable verbal exchanges with the arrestee.

Bell completed the EEOC charge process, and complained that his discharge was based solely upon his race and his age. A right to sue letter was issued and this action was filed timely on April 7, 2006. In this action he brought claims alleging violation of Title VII of the Civil Rights Act of 1964, as

1

amended, 42 U.S.C. § 2000-3; the Age Discrimination in Employment Act (ADEA,) 29 U.S.C. §620; and 42 U.S.C. §§ 1981 and 1983. Discovery has been completed. The plaintiff filed an opposition to the summary judgment motion on October 5, 2007, and the defendant filed a reply on October 12, 2007. Oral argument on the motion was had before the undersigned on October 16, 2007. Hence, it appears that consideration of the motion is appropriate.

## SUMMARY JUDGMENT STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 56(c), a district court must enter judgment against a party who, "after adequate time for discovery ... fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). Where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law," entry of summary judgment is mandated. Fed. R. Civ. P. 56(c).

To avoid summary judgment on a defendant's motion, a plaintiff must produce evidence creating a genuine issue of material fact. Issues of fact are in genuine dispute where the evidence "may be reasonably resolved in favor of either party." Id. at 250. In this regard, the trial ". . . judge must ask

himself not whether the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Id. at 252. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

However, "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512 (1986). Additionally, the plaintiff "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985).

## AGE DISCRIMINATION LAW

The ADEA makes it unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age. 29 U.S.C. § 623(a)(1); see, Gen. Dynamics Land Sys., Inc. v. Cline, 540 U.S. 581, 124 S.Ct. 1236, 1243 (2004)

(explaining that the ADEA "protect[s] a relatively old worker from discrimination that works to the advantage of the relatively young.") The age-based protections of the ADEA are "limited to individuals who are at least 40 years of age." 29 U.S.C. § 631.

In the absence of direct evidence of age discrimination, as here, courts analyze age discrimination claims under the same burden-shifting framework used to resolve other employment discrimination cases. Laber v. Harvey, 438 F.3d 404, 430 (4th Cir. 2006). The elements of prima facie case in an age discrimination case are identical to those used in a Title VII discrimination case. See, Bauer v. Albemarle Corp., 169 F.3d 962, 966 (5th Cir. 1999) ("The same evidentiary procedure for allocating burdens of production and proof applies to discrimination claims under both [Title VII and the ADEA]."). In order to establish a prima facie case of unlawful age discrimination, a plaintiff must show that (1) he is a member of the protected class; (2) he was qualified for the job and met [the employer's] legitimate expectations; (3) he suffered an adverse employment action; and (4) persons not in the protected class were treated more favorably. Warch v. Ohio Cas. Ins. Co., 435 F.3d 510 (4th Cir. 2006) (citing O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312-13, 116 S.Ct. 1307, 1310 (1996)).

4

If the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant-employer to articulate a legitimate nondiscriminatory reason for its actions. If the defendant carries this burden, the plaintiff must then establish by a preponderance of the evidence that the reason articulated by the employer is a pretext to mask unlawful discrimination. Laber v. Harvey, 438 F.3d 404, 432 (4th Cir. 2006) (en banc).

## TITLE VII RACE DISCRIMINATION LAW

Title VII makes it an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... race... ." 42 U.S.C. § 2000e-2(a)(1).

A plaintiff can prove an employer defendant's motive to discriminate by two methods. First, the "plaintiff may meet this burden under the ordinary standards of proof by direct and indirect evidence relevant to and sufficiently probative of the issue. In the alternative, a plaintiff may resort to the judicially created burden shifting scheme established in McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973) and Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981)." EEO v. Clay Printing Company, 955 F.2d 936 (4th Cir. 1992).

5

Under this burden shifting scheme, the plaintiff must carry the initial burden of proving a prima facie case. Generally in order to demonstrate a prima facie case under the McDonnell-Douglas scheme, a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for his job and his job performance was satisfactory; (3) he was subjected to an adverse employment action; and (4) he was replaced by someone of a rece other than his own. McDonnell- Douglas, 411 U.S. 792, 802 (1973); Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995).

Next, if the plaintiff establishes a prima facie case, the employer bears the burden of articulating a legitimate, nondiscriminatory reason for the challenged employment decision. By providing such an explanation, the employer rebuts the presumption of discrimination created by the prima facie case, and the presumption "drops out of the picture," having "fulfilled its role of forcing defendant to come forward with some response." St. Mary's Ctr. v. Hicks, 509 U.S. 502, 510-11 (1993). The plaintiff may then only prevail by persuading the fact finder that the employer's articulated reason was merely pretextual, and that unlawful discrimination had a determinative influence on the employer's decision. Hazen Paper Company v. Biggins, 507 U.S. 604, 610 (1994). The governing standard is simply whether the evidence, taken as a whole, is sufficient to

support a reasonable inference that prohibited racial discrimination occurred.

Therefore, if an employer uses unwise criteria in making personnel decisions, that does not amount to illegal discrimination. See, Jiminez v. Mary Washington College, 57 F.3d 369, 383 (4th Cir. 1995) ("The crucial issue in a Title VII action is an unlawfully discriminatory motive for a defendant's conduct, not the wisdom or folly of its business judgment."). Liability can attach only for decisions motivated by illegal racial animus.

### RACE DISCRIMINATION UNDER 42 U.S.C. §§ 1981 AND 1983

These are civil causes of action, enacted as part of the Civil Rights Act of 1866. Section 1981 states, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens...." Id. § 1981(a). The Supreme Court has long held the Civil Rights Act of 1866 "to prohibit all racial discrimination, whether or not under color of law, with respect to the rights enumerated therein." Jones v. Alfred H. Mayer Co., 392 U.S. 409, 436, 88 S.Ct. 2186 (1968).

The plaintiff may satisfy his burden of proof through the burden-shifting method of proof set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The allocation of proof is as follows: (1) the

plaintiff-employee must first establish a prima facie case of discrimination; (2) if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant-employer to articulate a legitimate non-discriminatory reason for its actions; and (3) if the defendant carries this burden, the plaintiff must then establish by a preponderance of the evidence that the reason articulated by the employer is a pretext to mask unlawful discrimination. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S.Ct. 1089 (1981) (quoting McDonnell Douglas, 411 U.S. at 802-03). See, Murrell v. Ocean Mecca Motel, Inc., 262 F.3d 253, 257 (4th Cir. 2001).

## FACTS

In the case at bar, the relevant facts taken in a light most favorable to Bell as the nonmoving party with all reasonable inferences drawn in favor of Bell, to the extent supported by the record, are as follow.

Bell, who is an African American, was employed by the Town in 1984 as a police officer. His employment was terminated on February 25, 2005, at which time Bell was fifty-five (55) years old.

On February 12, 2005, Bell and Officer Jamie Alberson responded to a BOLO call from dispatch which advised the officers to be on the lookout for a maroon vehicle with a broken rear window with a white female driver being beaten by a black male

subject. It is undisputed that initially dispatch thought the suspect was armed and that this was considered to be a high risk stop.

Officer Alberson saw the vehicle, turned on her blue lights and the vehicle pulled over. The officers believed the suspect could be armed, therefore, the officers approached the vehicle with weapons drawn with Officer Alberson acting as the contact officer. The suspect, Valen Floyd, exited the passenger side of the vehicle. The officers gave Floyd contradictory orders: Floyd was instructed by Alberson to get back in the car, while Bell instructed Floyd to get on the ground. Floyd, indicating compliance, exited the car with his hands up. Floyd then turned back towards the car and laid down on the ground, dropping the items in his hands while doing so. A weapon was not among these items. Bell then crossed in front of the patrol car video and proceeded towards Floyd.

The Town contends that the patrol car video shows Bell intentionally and maliciously stomp twice on Floyd's back and use abusive, inappropriate and unnecessarily threatening language to a compliant Floyd. Bell contends the first instance of his foot touching Floyd's back was an accidental trip or stumble and the second was his utilization of the "ground stabilization technique" to keep the suspect still while cuffing him. Bell removed his foot from Floyd's back before he cuffed him.

After Floyd was restrained and after Floyd told Bell that he "wasn't going anywhere", Bell told Floyd, "I know you're not because I'll blow your ___ing head off if you move another inch, because I'm crazier than you, do you understand that?" Bell contends the language he used was appropriate given the circumstances, and contends that he handed his weapon to Officer Alberson. (Dep. of Bell, p. 34, 35). It is undisputed that Floyd was uninjured and did not proceed with any action against Bell.

Following the stop, the Beaufort County Sheriff's Department took custody of Floyd and made the arrest. A deputy sheriff on the scene requested the parole car video of the stop. At first, Bell told Alberson not to turn the video over, but later decided to allow Alberson to give the video to the deputy. Bell stated to Alberson at that time "[t]hey are going to have to edit that tape first" and "[t]hat was my twin brother, not me on the tape." (Internal Affairs investigation report).

Within two days of the incident, Chief Deputy Mike Hatfield of the Beaufort County Sheriff's Department contacted Bell's superior officer, Captain Karr, to advise that he was in possession of a video containing conduct of Port Royal police department personnel which concerned him. Hatfield asked that Karr come to his office to review the video. Karr complied and got a copy of the tape. Karr returned to the Port Royal Police Department and advised Chief Cadien of the incident. Cadien

10

reviewed the tape with Karr and then contacted the Town Manager Van Willis. Willis watched the video. Cadien advised Willis that he was going to start an Internal Affairs investigation. The matter was then turned over to Sgt. Griffith, the departments' Internal Affairs Officer. Cadien testified that an internal affairs investigation was the appropriate department protocol. (Dep. of Cadien, p. 20 and 21).

Sgt. Griffith initiated the investigation, reviewed the video, interviewed Officers Alberson, Bell, and witnesses on the scene, and reviewed department policies and procedures, and Bell's personnel file. The investigation resulted in a report dated February 18, 2005, which found that Bell violated Department Policy by using excessive force and recommended that the "case be reviewed by the Chief of Police for disciplinary action." (Internal Affairs Investigation Case #IA-05-0523).

Cadien reviewed Griffith's report and recommended to Willis that Bell be fired. (Dep. of Cadien p. 24). Cadien testified that Bell's conduct on the video recording was inappropriate and was the basis for his recommendation to Willis. (Dep. of Cadien p. 100) Both Cadien and Willis testified that Cadien did not make the ultimate decision to terminate Bell, rather it was Willis' decision to terminate Bell and Cadien made only a recommendation to Willis. (Dep. of Cadien p. 103). Willis stated that his decision was based on his own impression of the incident

on video as well as the outcome of the Internal Affairs report. (Dep. of Willis p. 46). Willis also deposed that he does not always follow or agree with the recommendation of his department heads relative to the discipline or termination of employees. He testified that he is the final decision maker. (Dep. of Willis, p. 30 and 31).

Willis told Cadien to fire Bell. Cadien asked and got approval to allow Bell to choose to resign rather than to be terminated. Bell refused to resign, so by Cadien's letter of February 25, 2005, Bell was terminated "as a result of the Internal Affairs investigation of the incident of 02/16/05."

Bell filed a grievance of his termination, and a hearing before a grievance committee made up of Town employees was held. The grievance committee agreed with Bell that the actions on the video were accidental and recommended that he not be terminated.

However, as Town Manager, Willis had the choice to reverse or uphold his original decision and he disagreed with the committee's recommendation and upheld the original decision finding the following:

> This was a particularly difficult decision, considering my respect for Lt. Bell and the length of his service to the Town, but my conclusion is based upon several things:
>
> 1) The force used was excessive.
> 2) After repeated viewings, I do not concur with the grievance committee that there was a slip, which was alleged by Lt. Bell as an explanation for the first "stomp" to the suspect's back.

12

> 3) The verbal exchange between Lt. Bell and the suspect was
> unacceptable and inappropriate. The explanation for the
> language is also unacceptable.
> 4) Lt. Bell's mention of time-specific stress contradicts his argument that the force used was appropriate.

(Letter of Willis dated March 25, 2005).

A younger white male, Lt. Griffith, was promoted to the position of Lieutenant following Plaintiff's termination. (Griffith dep. 8, 9).

### DISCUSSION

A review of the record and relevant case law reveals that the defendant's motion for summary should be granted and this matter ended.

This is not a difficult case. Under the standard governing summary judgment, it appears that Plaintiff has established a <u>prima</u> <u>facie</u> case of age and race discrimination because he was performing his job up to the reasonable expectations of his employer up until the incident of February 12, 2005, and he was replaced by a younger white male. However, Plaintiff's claims fail because he has not forecast evidence to rebut Defendant's nonpretextual nondiscriminatory reason for his termination.

Here, the plaintiff contends that there were several decision makers in addition to Willis including Griffith, Cadien and Karr and, therefore, all decision makers reasons must be examined to determine if they are legitimate. Even assuming for

purposes of the summary judgment motion that all the above mentioned persons were decision makers, all decision makers' reasons were based upon their undisputed belief that Bell had violated police procedures in the way he conducted Floyd's arrest. Ultimately, because all of the reasons leading up to and at the time of termination amply provide a nondiscriminatory, nonpretextual basis for termination, Plaintiff's attempt to create a genuine issue of material fact where there is none must fail.

The fact that the Town's grievance committee saw the arrest video and interpreted it differently than the decision makers is of no import. Reasonable persons can disagree and that in no way supports an inference of pretext to cover age or face discrimination. It is only the decision makers' reasons for concluding that Bell should be terminated which are relevant here. See, e.g., King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003); Hawkins v. PepsiCo., Inc., 203 F.3d 274, 280 (4th Cir. 2000); Tinsley v. First Union Nat'l Bank, 155 F.3d 435, 444-45 (4th Cir. 1998).

Similarly, in his brief Bell took the position that his ADEA claim must await determination by a finder of fact because, "one motivating factor that may have led to his termination may have been his cost to change the Police Department's retirement system." (Pl. brief pg. 28). This is Bell's speculative opinion

14

and, as such, does not help to show pretext for illegal age discrimination.

The pretext analysis does not convert Title VII, the ADEA, or the civil rights statutes into a vehicle for challenging what may be unfair, but nondiscriminatory, employment decisions. See, Holder v. City of Raleigh, 867 F.2d 823,828 (4th Cir. 1989). No court sits to arbitrate mere differences of opinion between employees and their supervisors. Hawkins, 203 F.3d at 281 (internal citations omitted); see also, Goldberg v. B. Green & Co., Inc., 836 F.2d 845, 848 (4th Cir. 1988) (stating that Plaintiff's own opinions and conclusory allegations do not have sufficient "probative force to reflect a genuine issue of material fact"). The defendant is entitled to summary judgment.

### CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended that the defendant's motion for summary judgment be granted and this matter ended.

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina
January 30, 2008